UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER KRILL, JR.,<br><br>    Defendant. | Case No. 23-cr-00342-JEB |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Peter Krill, Jr. to 13 months' incarceration, the midpoint of the applicable Guidelines range of 10 to 16 months agreed to by the parties and recommended by the Probation Office, a term of supervised release of 3 years, restitution in the amount of $2,000, and a special assessment of $100.

    I.    **INTRODUCTION**

The defendant, Peter Krill, Jr., participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

1

Krill joined the storming of the police line on the West Terrace at approximately 1:35 p.m. by grabbing a bike rack barricade and pulling it away from the officers to allow himself and other protesters to break through the perimeter. He then climbed the scaffolding erected for the inauguration and posted video to his TikTok account of officers being assaulted by the crowd. After witnessing the violence, at approximately 2:36 p.m., Krill unlawfully entered the U.S. Capitol through the Upper West Terrace. He proceeded with rioters to the Rotunda and did not comply with police commands and efforts to clear the area. Despite his criminal history, agents found weapons and ammunition when executing a search warrant in his home on the day he was arrested in this case.

The government recommends that the Court sentence Krill to 13 months' incarceration for his conviction of violating 18 U.S.C. § 231(a)(3). A 13-month sentence reflects the gravity of Krill's conduct, but also acknowledges his early admission of guilt.

## II.   FACTUAL BACKGROUND

### A.   The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 27, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

B.   **Krill's Role in the January 6, 2021 Attack on the Capitol**

Peter Krill joined the crowd of people who stormed the Capitol on January 6. His crimes are documented through his own video broadcast to TikTok, body worn camera from the Metropolitan Police Department, open-source video, and surveillance footage from inside of the Capitol.

Prior to January 6, 2021, Krill posted to his TikTok account the message, "See everyone in D.C. on January 6[.]" On January 6, Krill traveled to Washington, D.C. from New Jersey with several members of his family. They attended the "Stop the Steal" rally on the Ellipse, and then Krill separated from the group. Krill carried an American flag throughout the day, and he was wearing camouflage pants, a blue "Trump 2020" sweatshirt, a military-style helmet, and goggles. At times, Krill also wore a mouthpiece.

*Breach of the Police Line*

Krill made his way to the Capitol grounds early in the siege. By at least 1:30 p.m., he arrived in the restricted area of the West Plaza of the Capitol grounds. At that time, officers were attempting to contain the crowd with a series of metal barriers. Krill joined rioters confronting officers in the Lower West Plaza.



*Image 1: Krill (circled in yellow) with other rioters as officers deploy chemical irritants and attempt to contain crowd.*

Body worn camera footage shows that at approximately 1:35 p.m., Krill successfully grabbed a barricade. Image 2 below is a screenshot from Exhibit A, body worn camera video depicting Krill grabbing the barricade from the officer:



*Image 2:   Krill's hands (circled in red) grabbing the barricade.*

When Krill pulled the barricade away from the officer, it allowed a group of protestors to push into the officers before being pushed back behind the barricade.

### *Krill Ascends the Scaffolding and Broadcasts Videos to TikTok*

After Krill and other rioters broke through the line of officers, Krill climbed with other rioters up the steps on the West side of the Capitol, and through north side scaffolding that had been set up for the inauguration.

While up on the scaffolding, Krill took videos and broadcast them to his TikTok account, titled "petekrilldontgiveafuck." First, Krill took a video from the scaffolding depicting fellow rioters on the inauguration scaffolding and the growing crowd below. *See* Exhibit B.



*Image 3:   Screenshot from Krill's first TikTok video at Exhibit B depicting the stage and scaffolding.*

At approximately 2:28 p.m., the crowd overwhelmed police officers on the Upper West Terrace. Krill broadcast the melee to TikTok. *See* Exhibit C. The video shows rioters attacking police by shoving, pushing, and punching to break through the line.

6



*Image 4: Screenshot from Exhibit C showing assaults on police as rioters overtake the West Plaza.*

As the crowd surged forward, rioters threw objects from the scaffolding and celebrated as officers were forced to retreat.

### *Krill's Illegal Entry into the Capitol Building*

After broadcasting the two videos to TikTok, Krill joined the large crowd entering the Capitol Building. At approximately 2:36 p.m., eight minutes after the video at Exhibit C, Krill entered the Capitol through the Upper West Terrace Door.



*Image 5: Krill (in yellow square) enters the Capitol with other rioters through the Upper West Terrace Door*

Krill then walked to the Rotunda and other areas of the Capitol. He remained inside the Capitol for approximately 47 minutes.



*Image 6:   Krill in the Rotunda wearing a military-style helmet and goggles and carrying an American flag on a pole.*

At approximately 3:00 p.m., police officers entered the Rotunda and began clearing the room of rioters, including Krill. As shown in the video at Exhibit D, Krill tried to hold his position despite police attempts to remove all of the rioters from the room. Krill was one of the last rioters to leave the Rotunda area.



*Image 7:   Law enforcement surrounds remaining rioters, including Krill (circled in red) to regain control of the Rotunda.*

Krill then exited the Capitol building through the East Rotunda Doors at approximately 3:23 p.m.

### *Krill's Arrest and FBI Interview*

Krill voluntarily spoke with FBI agents following his arrest and admitted to his participation in the Capitol riot.  He identified himself in photographs, including Images 4 and 6. Krill explained that he wore the military-style helmet because he expected Antifa to be present and thought there may be projectiles or "combat."

FBI agents executed a federal warrant to search Krill's home on December 15, 2022. When he voluntarily met with the agents that day, Krill provided the code to the safe and told the agents where to find keys to access a portion of the safe. During the search, agents found and

10

seized rifles, handguns, and an explosive device.[2] Krill admitted the weapons were his and that he was a prohibited person.

### III.   THE CHARGES AND PLEA AGREEMENT

On December 15, 2022, Krill was charged by complaint with six counts, including, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).  On October 10, 2023, Krill was charged by information with one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) and was convicted of the offense based on a guilty plea entered pursuant to a plea agreement.

### IV.   STATUTORY PENALTIES

Krill now faces sentencing on one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Krill faces up to five years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, restitution, and a mandatory special assessment of $100.

### V.   THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

The U.S. Probation Office calculated Krill's criminal history as category II, which is not disputed. PSR ¶ 50. Accordingly, based on the government's calculation of Krill's total adjusted offense level, after acceptance of responsibility, at 11, Krill's Guidelines imprisonment range is

---

[2] Krill stated that the explosive device was for fireworks.

10 to 16 months' imprisonment. Krill's plea agreement contains an agreed-upon Guidelines range calculation that mirrors this calculation.

## VI.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.   Nature and Circumstances of the Offense

As shown in Section II(A) of this memorandum, Krill's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Krill's decision to wear tactical gear – a helmet and goggles – demonstrates that he was prepared for violence. Despite the chaos on the West Front, he interfered with police officers trying to contain the crowd when he moved the barricade. He made his way up the scaffolding and broadcast video of police being assaulted as rioters celebrated. After witnessing the violence and destruction, he entered the Capitol and failed to follow commands from officers trying to regain control of the Rotunda. The nature and circumstances of Krill's offense were of the utmost seriousness, and fully support the government's recommended sentence of 13 months of incarceration.

### B. Krill's History and Characteristics

Krill, a 55-year-old male, operated a construction business. Krill has a history of criminal arrests and convictions that goes back several decades. That history, according to the PSR, includes:

- In 1986, Krill was charged with burglary. He was sentenced to 10 days of confinement and three years of probation. PSR ¶ 41.

12

- In 1991, Krill was charged with cocaine possession. He was sentenced to 139 days of confinement and four years of probation. His probation was revoked. PSR ¶ 42.

- In 1993, Krill, using the alias Michael Kroner, was charged with resisting arrest and possession of controlled substance. Krill was sentenced to 27 days of confinement and one year of probation. His probation was revoked. PSR ¶ 43.

- In 1994, Krill pled guilty to unlawful taking of a 1988 Honda Accord and was sentenced to nine months of confinement. PSR. ¶ 44.

- Also in 1994, Krill was sentenced to 10 days of confinement for shoplifting. PSR ¶ 45.

- In 1995, Krill was charged with disorderly conduct and was sentenced to 60 days of confinement. PSR ¶ 46.

- In 1998, Krill was charged with prohibited weapons / devices and sentenced to 18 months of confinement. PSR ¶ 47.

- Also in 1998, Krill was charged with burglary of a residence and sentenced to four years of confinement. PSR ¶ 48.

- In 2004, Krill was charged with robbery. In 2006, Krill was sentenced to six years of confinement. PSR ¶ 49.

The government recognizes that the offenses above occurred decades ago. However, as indicated by this history, Krill's actions on January 6 were not an isolated event in an otherwise law-abiding life. They came, instead, after a series of previous charges, including robbery and burglary. Moreover, as a convicted felon, Krill is prohibited from possessing firearms or ammunition. When FBI agents searched his home on December 15, 2022, they found firearms and ammunition in his home.

This history demonstrates a pattern of disregard for the law that is fully consistent with his behavior on January 6, when he grabbed a bike rack to break through the police perimeter and disregarded commands from officers to leave the Capitol.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Krill's criminal conduct on January 6 was the epitome of disrespect for the law.

### D. The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[3] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence in this case to provide specific deterrence to Krill also weighs heavily in favor of a lengthy term of incarceration. Krill's actions on January 6, as well as his lack of remorse, demonstrate the need for specific deterrence. Throughout his hours on the Capitol grounds, Krill chose to continue in his path and engage in troubling conduct. Despite the obvious indicators of mayhem when he was at the West Front, he moved the barricade to impede officers. He pressed on and witnessed and broadcast violence against officers from his vantage point on the scaffolding. He continued on again when he entered the Capitol, where he disregarded police commands. In addition, his criminal history includes instances of him committing new offenses while on probation or otherwise failing to comply with the terms of his probation.  *See* PSR ¶¶ 42,

---

[3] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

14

43. Krill's sentence must be sufficient to provide specific deterrence from committing future crimes.

E. The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

F. Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-

15

disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Daniel Leyden*, 21-cr-314 (TNM), Sent. Hrg. Tr. at 38 ("I think the government rightly points out generally the best way to avoid unwarranted sentencing disparities is to follow the guidelines.") (statement of Judge McFadden); *United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier

'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[4]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[5]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

For example, in *United States v. Moises Romero*, 21-cr-677-TSC, the defendant joined other rioters to push a temporary barrier against officers who were using it to prevent them from entering the Senate Wing Door. Unlike Krill, Romero had a criminal history category of only I, resulting an advisory range of 8-14 months. Judge Chutkan sentenced Romero to 12 months and 1 day. Here, Krill

---

[4] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

has a more serious criminal history, and so faces a higher guideline range, and a correspondingly higher sentence is warranted.

In *United States. v. Ronnie Presley*, 21-cr-257-RDM, the defendant similarly disregarded police officers' commands to exit the Rotunda and resisted as police offers tried to push them out. Like Krill, Presley pled guilty to violating Section 231(a)(3) and received the 3-level increase for physical contact, resulting in a total offense level of 11 after acceptance of responsibility. Presley also had a criminal history category of II and faced the same advisory range of 10-16 months. Presley was sentenced by Judge Moss to 12 months of incarceration.

While these are not identical to the present case, they share salient features, and provide good comparisons to the relevant sentencing considerations in this case. In contrast to Krill, both Romero and Presley also grabbed and pulled on a police officer's riot shield as the officer was attempting to push others out of the building. However, Krill's conduct is more egregious because it was not limited to a single interaction. Krill grabbed a bike rack to push it against the police line, broadcast video of the riot to his TikTok account, and did not move when officers were attempting to clear the Rotunda. Accordingly, the Government's recommended sentence of 13 months would not create an unwarranted sentencing disparity.

In *United States v. Narayana Rheiner*, 22-cr-103-DLF, the defendant, like Krill, had an extensive criminal record. He was at the head of a mob confronting police officers on the Upper West Terrace and encouraged them to "push up" against the police line. Rheiner grabbed an officer's riot shield and pulled it away from the officer, causing him fall down several steps to the ground. After entering the Capitol building, Rheiner and other rioters confronted officers near the Old Senate Chamber and made physical contact with one of the officers. Like Krill, Rheiner pleaded guilty to a single count, a violation of 18 U.S.C. § 231(a)(3). Judge Friedrich sentenced Rheiner to 15 months'

18

incarceration. Because Rheiner's conduct was more aggressive than Krill's, a 13 month sentence for Krill would not create an unwarranted disparity.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Krill must pay $2,000 in restitution, which reflects in part the role Krill played in the riot on January 6.[7] Plea Agreement at ¶ 11. As the plea agreement reflects,

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

19

the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Krill's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 123.

### VIII. CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 13 months of incarceration, in the middle of his advisory guidelines range, three years of supervised release, $2,000 in restitution, and a $100 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:  /s/ *Sarah W. Rocha*
SARAH W. ROCHA
Trial Attorney / Detailee
D.C. Bar No. 977497
Capitol Siege Section
U.S. Attorney's Office
District of Columbia
Telephone No: (202) 330-1735
Email: sarah.wilsonrocha@usdoj.gov